**Julius E. TALTON, et al., Plaintiffs-Appellees,**

v.

**CITY OF SELMA, AL; et al., Defendants,**

and

**F.D. Reese & Raymond Major, Defendants-Appellants.**

No. 84–7445.

United States Court of Appeals, Eleventh Circuit.

April 19, 1985.

J.L. Chestnut, Jr., Carlos A. Williams, Selma, Ala., for Reese and Major.

Joe T. Pilcher, Jr., John E. Pilcher, J. Garrison Thompson, Selma, Ala., for plaintiffs-appellees.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

This is an appeal filed by two former members of the city council of the City of Selma, Alabama from an injunction by the district court directing the election of members of the city council for the election in 1984 to be from five wards each having a single member.

Appellants' contention is that the plan adopted by the district court reduced the number of blacks that could be "practically elected to the Selma City Council to two out of a total number of five members" from a number of five out of ten that could "practicably be elected" under the plan which the trial court had established for the 1980 election.

The history of the litigation affecting the composition of the Selma City Council is convoluted in the extreme. Under the plan in effect prior to the filing of this action in the summer of 1980 members of the city council were elected at large from five wards within the city. This city ordinance was held to be unconstitutional as in violation of the one man-one vote principle of *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), by the trial court's order entered in 1980. At that time, the court importuned the city council which was to be elected under its temporary plan to legislate a proper and constitutional city government. The plan then adopted provided for five wards, each to be divided into a north and a south district, with one member to be elected from each of the ten districts. The 1980 election resulted in five black and five white members being elected to the council. Subsequent to the 1980 election, the city council submitted a new plan to the Department of Justice for its approval under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. This submission was not made until 1983, hardly leaving time for its processing and subsequent court action in case it was disapproved before the next election to be held in July 1984. The plan was not approved by the attorney general. The plaintiffs in the original action filed a motion for further relief. Under the original action,

the plaintiffs had sought relief only on the ground that they were voters in a ward whose population was substantially higher than some of the other wards in the city and that they were thus grossly under-represented under *Reynolds v. Sims, supra.* Their motion for further relief continued to allege only this basis for seeking a further injunction against the conduct of the 1984 election based on the 1974 at-large plan. However, since the city had submitted its plan to the attorney general of the United States under § 5 of the Voting Rights Act, and since it had been rejected by the attorney general on racial grounds, the trial court necessarily had before it in considering the motion for further relief the argument of the objecting voters that the proposed plan would either dilute the black vote or be a regression from the previous position held by the blacks in voting power in the city.

The appellants filed a motion to dismiss the motion for further relief, contending that the 1980 order gave plaintiffs all they sought and all they were entitled to, contending that the court should let the 1980 order control as to the 1984 election. Overruling the motion to dismiss, the court then conducted a hearing of the parties on May 17, 1984 to determine precisely what issues were then before the court for solution before the closing of dates for qualifying for the election to be held less than two months hence.

The trial court announced that it would designate a Dr. Voyles, who had been the court's expert witness during the 1980 hearing, as an expert to assist it in devising a constitutional plan. The court stated that it would devise a plan which it would submit to the parties with the hope that they could comment on it in ample time, preferably within two weeks from the date of the hearing. However, the court then twice stated that its plan would be based on a concept which would include five wards with a single member from each ward. The court obtained the consent of all parties that no further evidence was necessary before it undertook to fashion its

plan. Thereafter, it received a report from Dr. Voyles on May 31 and the court entered its order on June 1. The order adopted a five ward plan with one councilman from each ward and allowed candidates to run from the designated wards by filing the legal notice required up through June 13 for the election to be held July 20.

Appellees object to this Court's considering the dilution issue because they say it was not raised in the trial court.

Appellants say that their failure to raise the issues as to dilution or regression in the black vote must be attributed to the fact that the trial court did not submit to them its proposed order before it was entered on June 1. In light, however, of the fact that the court stated that it would receive comments from the parties, and in view of the fact that there was still 45 days before the election was to be held, it is evident that the trial court would have given ample consideration to any claims based upon the appellants' contentions that the new plan adversely affected black voters upon the making of a proper motion by the appellants or any other black citizens.

At no time during the May 17 hearing did any party call to the court's attention the necessity for giving more careful or especial attention to the need to hear either expert or lay evidence touching on this issue. Nor did appellants make any objection to the court's statement that it would reduce the size of the council from ten to five members.

Nevertheless, the trial court's findings of fact, based largely on the studies made by Dr. Voyles both in 1980 and in 1984, demonstrate, as the court said, the following:

> In considering the impact of the Plan upon minority voters, the Court notes that Wards 1 and 2 appear to be "safe" White wards, while Wards 4 and 5 appear to be "safe" black wards. Ward 3 is apparently a swing ward, but has a higher number of Black residents. Importantly, Dr. Voyles has informed the Court:

> > As you may note, Ward 3 is relatively close in population by racial breakdown, although it shows a black majority. In comparing data from the 1960 census, I have observed trends which lead me to speculate that Ward 3 probably has a greater black population in 1984 than it did at the time of the 1980 census. This trend seems likely to continue over the next few years, thus probably increasing the black majority in Ward 3 between now and the 1980 census reports.

> (Exhibit C). Thus, black residents have a fair chance of increasing their ward representation over prior years. Indeed, they have an excellent opportunity, see discussion *infra*, to gain control of the City Council. Assuming Dr. Voyles is correct, this would mean that the total Black population of Selma is probably greater than indicated by the 1980 census. This could mean that Black residents have a good opportunity to elect Black residents to either or both of the offices of the mayor or the city council president. Even if they do not elect Black citizens to either of these two offices or to the position of Ward 3 councilman, given their increasing percentage of the population, indeed they are now a majority, no city-wide elected official or elected councilman from Ward 3 could afford not to be responsive to the needs of Selma's Black citizens. Failure to do so would, given population trends, probably mean defeat in 1988.[1]

---

1. The figures as to the black and white populations of the several wards are as follows:

SELMA, PROPOSED 5 DISTRICT PLAN

| WARD | TOTAL | WHITE | BLACK | DEVIATION |
|------|-------|-------|-------|-----------|
| 1 | 5360 | 4770 | 590 | 0.4 |
| 2 | 5246 | 3533 | 1713 | 1.6 |
| 3 | 5323 | 2416 | 2907 | 0.25 |

The 1984 election has passed. The appellants have not prayed that the election be vacated. The trial court expressly retained jurisdiction of the case. If the appellants are entitled to further relief based upon their contentions, really developed for the first time on appeal here, they have ample opportunity to present them by motion or by the filing of a new action in the district court in time to have them disposed of before the next city election.

The judgment is AFFIRMED.

| WARD | TOTAL | WHITE | BLACK | DEVIATION |
|---|---|---|---|---|
| 4 | 5339 | 1207 | 4132 | 0.05 |
| 5 | 5416 | 466 | 4950 | 1.5 |

| | |
|---|---|
| TOTAL CITY POPULATION: | 26684 |
| TOTAL WHITE POPULATION: | 12392 |
| TOTAL NON–WHITE POPULATION: | 14292 |
| IDEAL WARD SIZE: | 5336 |